*American Medical Response, Inc. v. City of Stockton*
*United States District Court- Eastern District No. 2:05-CV-01316-DFL-PAN*

# EXHIBIT 1



C.M. FILE
COPY

**AMERICAN MEDICAL RESPONSE®**

June 25, 2005

HAND DELIVERED

Mark Lewis
City Manager
City of Stockton
425 North El Dorado Street
Stockton, CA 95202

RE: Discontinuance of Negotiations

Dear Mark:

I have reviewed your letter of June 24, 2005, where you commented on what you believed were the three reasons that I referenced for AMR's discontinuance of negotiations during our meeting yesterday.

While I don't want to get into a war of letters, I felt it important that I clarify two of the three reasons you sited. (1) AMR's "testing" of the members of the San Joaquin County Board of Supervisors was limited to their tolerance for inclusion of costs not related to the delivery of Emergency Ambulance Services, thereby causing significantly higher rates to the citizens of the County, and not whether they were supportive of a public/private joint venture approach to responding to the up and coming RFP. (2) The reference you draw to the comments I made regarding my reputation and that of AMR's are also inaccurate. My statement was that AMR and I would not damage our reputations by submitting a proposal to the county that was either not responsive or non-competitive due to the inclusion of excess cost not related to the provision of Emergency Ambulance Services.

In closing, we regret that our organizations were unable to conclude agreements to submit a joint proposal.

Sincerely,

Louis K. Meyer
Chief Executive Officer
Northwest-Plains Region

Δ π EXHIBIT 4
Deponent Meyer
Date 8-8-05 Rptr. BJH
WWW.DEPOBOOK.COM



cc    Mayor Ed Chavez, City of Stockton
Hon. Steve Bestolarides, Council Member District 1
Hon. Dan Chapman, Council Member District 2
Hon. Leslie Baranco Martin, Council Member District 3
Hon. Clem Lee, Council Member District 4
Hon. Gary S. Giovanetti, Council Member District 5
Hon. Rebecca Nabors, Council Member District 6
Gary Gillis, Fire Chief

*American Medical Response, Inc. v. City of Stockton*
*United States District Court- Eastern District No. 2:05-CV-01316-DFL-PAN*

# EXHIBIT 2



June 24, 2005

HAND DELIVERED

Mark Lewis
City Manager
City of Stockton
425 North El Dorado Street
Stockton, CA  95202

RE:   Discontinuance of Negotiations

Dear Mark:

This letter memorializes our discussion today, in which I indicated that AMR is no longer able to negotiate with the City over the creation of a joint venture to submit a proposal to the County of San Joaquin to perform emergency ambulance services.

As I explained today, my staff and I have spent countless hours meeting with City of Stockton Fire Department ("Department") personnel in an attempt to reach agreement on the terms of a joint venture agreement that would permit the parties to submit a joint proposal to the County in response to the upcoming ambulance RFP. In these negotiations, we have repeatedly indicated that our goals were to form an alliance capable of providing high quality emergency medical services in an efficient and cost effective manner. The County has also made it clear that the contract will not be awarded to a bidder whose proposal includes excessive costs unrelated to the delivery of high quality ambulance services. Nor would a contract burdened with high costs and correspondingly high user fees be in the best interests of the City's or the County's residents.

Despite our best and most diligent efforts to reach agreement with the Department, it is now clear to us that the Department is not negotiating in good faith, and that it will not be possible to forge an alliance capable of either winning the contract or of delivering high quality, cost effective emergency services. This is perhaps best illustrated by the e-mail we received from Department leadership, dated June 21, in which Assistant Chief Dave Hafey proposed, for the first time, to insert language into the Draft Memorandum of Understanding ("MOU") we have been working on for months that would require AMR to pay the City a "SFD Management Fee" and an "Oversight Fee." In addition, the Department has included new language requiring that AMR pay the City to house up to four ALS units and also to house "office and medical supply management." As we have repeatedly stated, adding these kinds of superfluous and unnecessary costs to the proposal is not feasible and is completely inconsistent with our prior understandings.



Mark, the crux of the problem appears to be the City's need to make up for past losses. Department personnel have repeatedly indicated that the City views the County Contract as a means of recouping the losses the City incurred in operating an ambulance service over the last several years. In one meeting, for example, Dave Hafey said that the City needed to generate sufficient revenue from the contract to "repay the loan" that the ambulance service had incurred to the City general fund. We have reiterated, time and time again, that this is unacceptable. (See, for example, my letter of March 21, 2005.) We have further stated that the user fee structure should not be any higher than needed to support a self-sustaining program going forward. The City has expressed agreement with this concept, but then time and time again has reneged on that position and made the kind of demand set forth in the recent Hafey e-mail. Even today, you referred to "millions of dollars" in costs that you believe were incurred in reliance on the expectation that the joint venture would win the Contract. We cannot imagine the City has incurred even $100,000 in costs in negotiating this transaction. Were you referring to the money lost to date in the City's existing ambulance program that the City expected to recoup from future ambulance user fees if the joint venture won the contract?

What we find particularly distressing about the Department's position as reflected in the Hafey e-mail is that it runs directly counter to what we thought were firm understandings regarding the content of our MOU. However, as has happened on several prior occasions, commitments made to us by City personnel have been disregarded by the Department as if they were never made. It appears that the Department's goals are to balance its budget, *both current and past*, on the backs of County and City residents who require ambulance services in the future.

Another example of the City's bad faith is its failure to disclose the <u>Hughes</u> lawsuit filed on May 14, 2004, alleging violations of the Fair Labor Standards Act by the City dispatch center. That lawsuit represents a major potential liability to the joint venture that the City had a duty to disclose. Rather than disclose it, the Hafey e-mail attempts to lock in funding for the center despite the potential additional costs that were, until today, unknown to AMR.

At this juncture, AMR has determined that it will not be possible to work with the Department in a collaborative relationship to achieve the goals specified above. Although the City Manager's office has made unsuccessful attempts to intercede, it is the Department that AMR would need to work with in submitting the proposal, and we do not think that is possible. Consequently, AMR intends to proceed with its own proposal to be submitted to the County. Providing the City with notice at this time should also provide the City with plenty of time to prepare its own proposal.

Finally, we have determined that our decision does not violate the joint venture document previously signed by the parties. As we have discussed with your City Attorneys, that agreement is void and unenforceable. Even if it were enforceable, it would, at most, require the parties to negotiate in good faith in pursuit of a definitive operating agreement to be submitted to the County as part of a joint proposal. AMR has done so but the City has not.

023.271870.1

AMR 002584

In closing, we regret that our organizations were unable to work together towards the worthy goal of implementing a high quality EMS system. If you have any questions, please do not hesitate to contact me.

Very truly yours,

Louis K. Meyer
Chief Executive Officer
Northwest-Plains Region

cc      Mayor Ed Chavez, City of Stockton
        Hon. Steve Bestolarides, Council Member District 1
        Hon. Dan Chapman, Council Member District 2
        Hon. Leslie Baranco Martin, Council Member District 3
        Hon. Clem Lee, Council Member District 4
        Hon. Gary S. Giovanetti, Council Member District 5
        Hon. Rebecca Nabors, Council Member District 6

023.271870.1

AMR 002585

*American Medical Response, Inc. v. City of Stockton*
*United States District Court- Eastern District No. 2:05-CV-01316-DFL-PAN*

# EXHIBIT 3



## AMERICAN MEDICAL RESPONSE
*Patient Focused, Caregiver Inspired, Customer Centered*

## MEMORANDUM

**DATE:** April 12, 2004
**TO:** Lou Meyer
**FROM:** Brad White
**SUBJECT:** Area Brief

Global

- Multiple conference calls and individual meetings/discussions have taken place with regard to revenue enhancement and cost containment with each business unit. Each business unit has been tasked to build an action plan but has not waited to implement. Final documents are due to the VPO this Wednesday.

Sacramento

- Sacramento Metropolitan Fire District transport requests are declining. SMFD has added UH's. Meeting being arranged to turn this trend around.

Placer/Yolo

- The State EMSA has approved 224 rights for AMR. Contract negotiations to begin shortly with SSVEMSA.

San Joaquin

- Since the beginning of FY04 two providers of six have exited or have announced that they are exiting by May 2004. Unfortunately, due to other providers adding units, total system UH's remain unchanged.
- Preliminary RFP work is underway with SFD and A1 Ambulance. Anticipate LFD joining the Joint Venture by May 2004.

Calaveras

- Anticipate the release of an RFP in July 2004



Δ π EXHIBIT 1
Deponent *Meyer*
Date 6-8-05 Rptr. *BJH*
WWW.DEPOBOOK.COM

AMR 004107

Contra Costa

- SEIU and Local 1230 are partnering to stop AMR's opportunity for a 3-year sole source agreement, forcing the system to bid.
    - o SEIU is believed to be doing this for two reasons:
        - ■ Revenge for AMR's perceived support of MEMSA
        - ■ Protecting two paramedic system
    - o Local 1230 wants and RFP to push for more FD funding than was made available by the county as part of the sole source agreement.

Stanislaus

- Negotiations are underway with the county to increase AMR's annual fees supporting the EMSA from 40k to as high as 180k. The county has indicated that they will allow a UCR increase to offset the fee (estimate 3%). In addition, we have asked for consideration to move the Blue Zone 7:30 minute / 90% clock to an 8:00 minute / 90% clock. We are not currently meeting compliance in this single zone and will be adding UH's. The EMSA appears open to this action.

Tulare

- No high profile issues.

Hawaii

- Kaho`olawe project ended April 8th.
- Maui County EMS helicopter implementation (July 1, 2004) is stalled in the political process. Unknown if the project will come to fruition. Pacific Helicopters has stated that they will be selling the Kaho'olawe medical helicopter in 90-days if the State does not make a commitment to the project.
- Honolulu FD is being openly discussed as a solution to City and County EMS. AMR is positioned to be a player with either entity.

AMR 004108

*American Medical Response, Inc. v. City of Stockton*
*United States District Court- Eastern District No. 2:05-CV-01316-DFL-PAN*

# EXHIBIT 4



## AMERICAN MEDICAL RESPONSE
### *Patient Focused, Caregiver Inspired, Customer Centered*

## CONFIDENTIAL MEMORANDUM

**DATE:** June 30, 2004
**TO:** Lou Meyer
**FROM:** Brad White
**SUBJECT:** Hiring of Donna McCann
**cc:** Chief Gillis, Barry Elzig, Division Chief Hafey, Captain Ed Rodriguez

---

### History

Ms. McCann (Donna) has verbally advised that she desires to remain part of the Joint Venture. All A-1 Ambulance transportation services have ceased.

Donna was asked about her interest in employment with AMR. Donna stated that she is still working her old accounts receivable and would be willing to immediately begin work three days per week. Ms. McCann further stated that she needs $72k annually. Ms. McCann was advised that $72k annually was not possible and that her limited hours of availability further reduced her potential earning power. In a follow up conversation, Donna stated that she was open to an offer below 72k and that she would consider working more hours.

### AMR / SFD Discussion

The following employment concepts were considered:

- JVA/LLC Supervising Coordinator (Donna would be tasked to coordinate various activities during the pre and post RFP process.)
- JVA/LLC Safety Coordinator (Donna would act as the Safety Coordinator for both AMR and SFD, supported by Dave Cavaro or Chris Pollard)
- Patient Billing Services Quality Coordinator (Donna to review billing paperwork for both SFD and AMR to support targeted EE education)
- Continuing Education Coordinator

Salary to be split equally between SFD and AMR



Δ π EXHIBIT 12
Deponent Meyer
Date 8-8-05 Rptr. BJH
WWW.DEPOBOOK.COM

AMR 004105

## Recommendation

- AMR will offer Donna employment (with AMR) as a Patient Billing Services Quality Coordinator (preliminary job description attached).
- The offer will be structured as a consultant or contract employee as human resources determines appropriate. (Donna has stated she does not need health benefits).
- Employment location AMR Lindsay Street
- Wage Recommendation $23.00 hourly
  - Wage Comparisons (AMR Clinical Education Coordinator)
    - Low 35,400   High 53,200 (Salaried)
    - Low 17.02   High 25.58 (Hourly)
  - Total annual estimated cost per agency (yet to be determined)
- AMR to invoice SFD monthly for 50% of Salary and Benefit costs
  - Further discussion required with SFD to secure concurrence and determine process.

## Next Steps

1. SFD agree on parameters noted above – Ed/Dave
2. AMR agree on parameters noted above - Brad
3. Confer with AMR Human Resources to determine EE status (F/T, P/T, Contract/Consultant) - Brad
4. Confer with AMR finance to determine full cost of wages and benefits - Brad
5. Establish reimbursement process from SFD to AMR – Barry/Ed/Dave
6. Make job offer and discuss A-1 participation in the JVA - Brad
7. Complete pre-employment and orientation processes - Barry

AMR 004106

*American Medical Response, Inc. v. City of Stockton*
*United States District Court- Eastern District No. 2:05-CV-01316-DFL-PAN*

# EXHIBIT 5

Message

## Au, Angela

**From:**  White, Brad
**Sent:**  Monday, April 04, 2005 2:56 PM
**To:**  Meyer, Lou; Dorn, Tim; Elzig, Barry
**Subject:** FW: EMS marginal costs

Well, Lodi blinked – 88k down to 19k. Tim, please build this number into the plan for 5 engines. We still have an open issue as one of their 5 is a truck housed with an engine. However, if 94k does not break the bank we may wish to seal up Lodi prior to the Stockton war on the 15th.

**From:** Mike Pretz [mailto:mpretz@lodi.gov]
**Sent:** Monday, April 04, 2005 9:28 AM
**To:** White, Brad
**Cc:** Dave Hafey; Janice Magdich; Christopher Platten
**Subject:** EMS marginal costs

Brad,
Here are the Lodi Fire Department marginal cost for sub-contract BLS service.  Annual $94,146 or $18,829 per unit.

Michael Pretz
Fire Chief
Lodi Fire Department
(209) 333-6735

Δ π EXHIBIT 17
Deponent meyer
Date 8-8-05 Rptr 514
WWW.DEPOBOOK.COM

AMR 000266

*American Medical Response, Inc. v. City of Stockton*
*United States District Court- Eastern District No. 2:05-CV-01316-DFL-PAN*

# EXHIBIT 6

**AMERICAN MEDICAL RESPONSE®**

March 21, 2005

Gary Gillis, Chief
Stockton Fire Department
425 North El Dorado Street
Stockton, CA  95202

Dear Chief Gillis,

As you are aware, on or about April 15, 2005, San Joaquin County will release an EMS Request for Proposals (RFP).  Time is extremely short for the City of Stockton (Stockton) and American Medical Response (AMR) to address and bring to closure several key issues that remain unresolved if the parties are to complete the formation of a limited liability company ("LLC") as contemplated by the new MOU the parties have negotiated. AMR is very concerned that these issues, if not resolved prior to release of the RFP, will place the proposed LLC, its members, and subcontractor in untenable positions, requiring the parties to seek other options with regard to the development of a proposal that can deliver cost-effective ambulance service to the citizens of San Joaquin County.  Let me state emphatically that AMR desires to resolve the following issues and move forward with our original agreement of a equal partnership with the City of Stockton.

**Stockton Prior Financial Losses:** Stockton has made clear that it must recoup prior ambulance service financial losses of $3,509,318.  AMR has made clear its position that it will not consider submitting a proposal to the County that includes an increase in patient charges intended to permit Stockton to recoup prior financial losses.  Based on an estimated marginal collection rate, additional gross patient charges of over $17,000,000 million dollars would be required to pay off this loss over the life of a 5-year contract, thereby making the LLC's Proposal to the County non-competitive.  AMR in good conscience cannot support Stockton's request to pass these costs onto future consumers of ambulance services through the LLC.

**City of Stockton ALS First Responder Fees:** Stockton has presented ALS First Responder fees to be borne equally by the LLC parties in the total combined amount of $780,000 annually.  AMR concurs with Stockton that the residents of Stockton and the EMS system benefit from ALS first response and that the LLC should include as part of patient charges the <u>reasonable</u> marginal cost of said services.  Based on an estimated



Δ π EXHIBIT 18
Deponent meyer
Date 5-5-05 Rptr. BJT
WWW.DEPOBOOK.COM

**CS 001807**

1

marginal collection rate, additional gross patient charges of over $3,900,000 would be required to pay this level of first responder fees annually. Over the life of a 5-year contract, the total gross patient charges would be over $19,000,000. AMR requests that Stockton reconsider the level of first responder funding to ensure the LLC proposal is competitive and, if awarded the County agreement, that the rates charged are fair to the citizens of Stockton and San Joaquin County. In addition, AMR will require that the total combined annual cost of first responder fees be paid by the LLC prior to revenue disbursement to the parties.

**LLC Paying for One 24-Hour Stockton Ambulance:** At a March 11, 2005 meeting between Stockton and AMR, Stockton presented a financial proposal that included the LLC bearing the direct cost of one 24-hour ambulance operated by Stockton. The stated goal was to ensure full cost recovery by Stockton and to ensure that revenues disbursed by the LLC following payment of direct LLC costs would provide sufficient revenues to pay for Stockton's prior operating losses. AMR in good conscience cannot support Stockton's request to pass prior losses onto future consumers of ambulance services through the LLC.

**City of Stockton, Initial Unit Hours and Revenue Disbursement:** AMR restates its position that initial system unit hours will be an equal and even number, and that LLC revenue, following payment of direct LLC costs, will be disbursed equally to the members.

**City of Lodi – Subcontractor to LLC:** At a March 7, 2005 meeting of Lodi, Stockton, and AMR, AMR presented a separate MOU between AMR and Lodi for first responder fees and other issues specific to EMS operations in Lodi. Both Stockton and Lodi demanded that Lodi be included in the proposed system as a subcontractor to the LLC. AMR specifically asked if the LLC would pay the Lodi first responder and other fees, and all parties agreed it would. Based on this discussion, AMR agreed to the inclusion of Lodi in the system as a subcontractor to the LLC. At a March 11, 2005 meeting of Stockton and AMR, Stockton rescinded its agreement that the LLC will pay Lodi's first responder and other fees. AMR could agree that the LLC would not pay Lodi's first responder and other fees, so long as Lodi is not part of the system as a contractor to the LLC and a separate MOU is negotiated directly between AMR and Lodi. Since the LLC bears no financial liabilities for Lodi, it should not have a contract with it.

**Regional Ambulance Dispatch Center:** During our March 11, 2005 meeting, Stockton stated that its existing CAD was not built for the type of reporting that will be required by the RFP. This challenge must be resolved in order for the LLC to meet mandatory reporting requirements. AMR requests that Stockton identify the method by which it will be able to meet reporting requirements. AMR's Modesto CAD may be an option to resolve this challenge. AMR will require that hardware and other cost to bring the AMR Modesto CAD on-line for this need be borne by the LLC.

CS 001808

2

**Electronic PCR:** AMR anticipates that the RFP will require a proposal to provide electronic patient care data collection and reporting. AMR proposes that the LLC members utilize AMR's proprietary electronic data system. The cost associated with implementation, utilization, and maintenance should be borne by the LLC.

**LLC Costs Prior to Revenue Disbursement to the Members:** AMR recommends that the following cost items be paid by the LLC prior to profit disbursement to the members:

- ✓ Stockton First Responder fees
- ✓ Dispatch fees of the Members
- ✓ Medical Director
- ✓ CQI Registered Nurse or Paramedic
- ✓ Electronic Clinical Data Capture Reporting System, and one FTE Technician
- ✓ LLC bookkeeping and required audits
- ✓ AMR Modesto CAD
- ✓ Other items yet to be identified

As time is of the essence, AMR requests that Stockton take immediate action to help us resolve these matters prior to April 7, 2005. If these issues remain unresolved, AMR will do what it believes is necessary to assure that the County receives a cost-effective proposal for the delivery of high quality EMS to its citizens.

Sincerely,

Lou Meyer
Chief Executive Officer
Northwest-Plains Region
American Medical Response West, Inc.

cc: Brad White, Vice President of Operations, AMR
Barry Elzig, Director of Operations, AMR
Michael Hakeem, Esq.
Michael Scarano, Esq.
Mark Lewis, Stockton City Manager

CS 001809

3

*American Medical Response, Inc. v. City of Stockton*
*United States District Court- Eastern District No. 2:05-CV-01316-DFL-PAN*

# EXHIBIT 7



# CITY OF STOCKTON

**FIRE DEPARTMENT**

CITY HALL • 425 N. El Dorado Street • Stockton, CA 95202-1997 • 209/937-8801 • Fax 209/937-8836
www.stocktongov.com

April 7, 2005

Lou Meyer, Chief Executive Officer – AMR West
Northwest-Plains Region
7575 Southfront Road,
Livermore, CA  94551

Dear Mr. Meyer,

Both the City Manager and I are encouraged by the progress our two organizations made during our meeting on March 23, 2005. We identified the items listed and discussed below that were contained in your March 21, 2005 letter. You have our commitment to do what is necessary to work together to resolve all issues so that our partnership will be able to present to San Joaquin County a cost-effective proposal for the delivery of the highest quality emergency ambulance transportation services. Our current Joint Venture Agreement (JVA) is clear, your organization and mine are committed to participate as equal partners in the RFP process; I want to assure you that my organization intends to honor that JVA agreement as promised.

1.   **City of Stockton Prior Capital Assets:**

The City of Stockton (City) understands AMR's position and agrees to bring equal capital expenses to the proposed LLC.

2.   **City of Stockton ALS First Responder Fees:**

Both AMR and the City have agreed to include, as part of the proposed fee structure, a first responder fee. We also have an agreement that the first responder fee was intended to fund the marginal costs of providing paramedic services. The City agrees that marginal cost for one paramedic per engine will be included as part of our proposed fee structure to the County. The City would like to further discuss and explore ideas which would address marginal costs for ALS first response.



1

AMR 003063



**Stockton**
★★★★
All-America City
1999

3.   **LLC Paying for One 24-Hour Stockton Ambulance:**

Both AMR and the City have agreed to have the same amount of initial ALS transport units, so there will be no need for the LLC to pay for one 24-hour ambulance.   The City would like to continue discussions over a method of funding additional ambulances placed in service under the rotation process defined in our JVA.

4.   **City of Stockton, Initial Unit Hours and Revenue disbursement:**

The City agrees that the initial number of ALS transportation units will be provided equally between AMR and the City.   The City understands AMR's position that all LLC revenue shall be disbursed equally; we would like to discuss this matter further.   The City believes that there will be sufficient LLC revenue to provide AMR with an acceptable profit, cover all expenses and assure that the County receives a cost-effective proposal for the delivery of high quality EMS to its citizens.   The partnership has been considering forming a LLC as the tool that will allow for distribution of revenue and in-kind services to provide value for a cost-effective proposal. The City would like to continue meeting to explore ideas, which would provide in-kind services and LLC revenue.

5.   **City of Lodi – Subcontractor to LLC:**

The City and AMR agree that the LLC will contract with the City of Lodi for services.   Revenue from providing services within the City of Lodi response area will be utilized for paying Lodi services.

6.   **Regional Ambulance Dispatch Center:**

The City believes that the Regional Ambulance Dispatch Center CAD is capable of reporting all mandatory reporting requirements.

7.   **Electronic PCR:**

The City agrees to consider utilizing AMR's proprietary electronic data system.   AMR has agreed to provide the City with a demonstration of functions and price for utilizing AMR's electronic data system.   The City would like to continue meeting on this issue and explore the option of in-kind services for this system.

AMR 003064

8.   **LLC Costs Prior to Revenue Disbursement to the Members:**

As time is of the essence, the City has taken immediate action to begin to resolve the above concerns and reorganize the Department's current ambulance expenses.   We are fortunate to have the commitment of Stockton Firefighter's Local 456 to continue to work with both AMR and the City to develop a cost-effective proposal for the pending County RFP for ambulance services.

I appreciate the fact that you have modified your April 7 deadline and have agreed to meet on April 15 at 10:00 am at City Hall Fire Administration to further discuss our mutual concerns. I believe that most, if not all, of our concerns will be resolved to mutual benefaction.   The City will need to receive more information on function and expense for the list of items that AMR has presented within your letter dated March 21, 2005. If you could please bring the following information to the meeting:

2004 AMR Statistics for Ambulance Zone B, specifically:
- AMR's 911 call volume
- AMR's 911 transport volume
- AMR's revenue per transport
- Number of dedicated AMR ambulances per 24-hour period given in unit hour.

I am looking forward to finalizing the terms our partnership and I believe there is light at the end of the tunnel, so to speak. If you have any questions please do not hesitate to contact me.

Sincerely,

W. Gary Gillis, Fire Chief
Stockton Fire Department
425 North El Dorado Street
Stockton, CA  95202

3

AMR 003065