IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AMERICAN MEDICAL RESPONSE, INC.

    Plaintiff,

    v.

CITY OF STOCKTON,

    Defendant.
_____/

CITY OF STOCKTON,

    Counterclaimant,

    v.

AMERICAN MEDICAL RESPONSE, INC.

    Counterdefendant.
_____/

CIV-S-05-1316 DFL PAN

MEMORANDUM OF OPINION
        AND ORDER

    Defendant City of Stockton seeks a preliminary injunction prohibiting American Medical Response, Inc. from bidding on an ambulance service contract for the County of San Joaquin. For the reasons discussed below, the motion is DENIED.[1]

---

[1] Related cross-motions for summary judgment are also pending before the court. Given the County's bid deadline, the court has given priority to the motion for preliminary injunction and will resolve the other motions in due course.

I.

The following facts are not in dispute. American Medical Response, Inc. ("AMR") is a large corporation that has provided emergency and non-emergency ambulance service throughout the nation. It has provided these services in San Joaquin County for approximately twelve years. (Opp'n at 2.) Starting in 2002, the City of Stockton ("City"), through its fire department, began providing emergency ambulance service in and around the City as well. (Id.) Until recently, the ambulance market in the County was competitive and non-exclusive, with multiple service providers operating in Stockton, Lodi, and Tracy. (Id. at 3.) However, in January 2003, the County Emergency Medical Services Agency ("EMS Agency") decided to establish exclusive operating areas ("EOAs") in which one or more providers would bid for the exclusive right to provide emergency services within the EOA. (Id. at 4.) In July 2004, the County Board of Supervisors adopted the EMS Agency's plan to award exclusive contracts for the following three zones: (1) the City of Stockton and surrounding area (the "Stockton Zone"); (2) the City of Lodi (the "Lodi Zone"); and (3) the City of Tracy. (Id.; Rishwain Decl. Ex. 4.)

In early 2003, AMR and the City began to discuss collaborating on a joint bid proposal to respond to the County's anticipated Request for Proposals ("RFP") for the Stockton Zone. (Mot. at 5.) In June 2003, the City, AMR, and a third smaller company, A-1 Ambulance Service ("A-1"), signed a Memorandum of

2

Understanding stating their intent to submit a joint bid for the Stockton Zone ("2003 MOU").[2]  (Rishwain Decl. Ex. 2.)  Following the execution of the 2003 MOU, representatives of AMR and the City met periodically to discuss plans for their joint bid. (Mot. at 6-7.)  In July 2004, the City of Lodi also agreed to participate in a joint bid for the Stockton and Lodi Zones, and all three parties executed a Joint Venture Agreement (the "JVA"). (Mot. at 7; Rishwain Decl. Ex. 3.)  The JVA largely incorporated language from the 2003 MOU and included a statement that the parties would "jointly submit a response to the [County RFP] for the award of exclusive rights to emergency and non-emergency ambulance transportation within [the Stockton and Lodi Zones] . . . ."  (Rishwain Decl. Ex. 3.)  Most notably for this motion, § 4 of the JVA also provided as follows:

> If any party withdraws from the joint venture prior to an award of contract from the [County] or accepts an offer from another bidder to compete for the same service area, that party will be precluded from bidding in the [County] RFP for ambulance service.

(Id.)

Throughout 2004, AMR, the City, and Lodi representatives continued to meet and discuss the terms of a bid and of their business relationship.  (Mot. at 7-8, 11; Opp'n at 8.)  They began negotiating both a limited liability company agreement and an operating agreement.  (Id.)  In 2005, the parties began meeting in earnest to finalize these agreements and their plans

---

[2] A-1 went out of business in 2004; therefore, it is not party to this action.  (Mot. at 8.)

for a joint bid. (Mot. at 11-12; Opp'n at 9.) However, at this point, the relationship between AMR and the City began to break down. The reasons for the unraveling of the joint venture are disputed as between AMR and the City. On June 23, 2005, AMR's regional Chief Executive Officer, Louis Meyer, informed City Manager, Mark Lewis, that AMR was discontinuing further negotiations and whatever relationship had formed between the City and AMR. (Mot. at 12.) Meyer further explained that AMR intended to submit its own bid. (Opp'n at 11.) The City disapproved of AMR's withdrawal and informed AMR that § 4 of the JVA precluded AMR from submitting its own bid. (Mot. at 13.)

The County issued the RFP in July 2005, and the bids are due by September 22, 2005. (Rishwain Decl. Ex. 4.) The RFP contemplates the award of a five-year exclusive contract for emergency ambulance service in the Stockton Zone. (Id.) The City has now joined with Rural Metro Corporation and intends to submit a joint bid. (Opp'n at 12.) AMR intends to submit a solo bid. (Id. at 13.) The City asserts that AMR should be stopped from doing so and brings the present motion for preliminary injunction.

II.

The traditional four part test for granting a preliminary injunction looks to whether the movant has shown: (1) a strong likelihood of success on the merits; (2) irreparable injury if the injunction is not granted; (3) a balance of hardships in the movant's favor; and (4) the public interest favors granting the

4

injunction in cases affecting the public interest.  See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1200 (9th Cir. 1980).  In the Ninth Circuit, the moving party can meet its burden by making "a clear showing of either (1) a combination of probable success on the merits and a possibility of irreparable injury, or (2) that its claims raise serious questions as to the merits and that the balance of hardships tips in its favor." Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878, 881 (9th Cir. 2003). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."  Taylor By and Through Taylor v. Honig, 910 F.2d 627, 631 (9th Cir. 1990).  The burden on the City "is a heavy one where, as here, granting the preliminary injunction will give [the City] substantially the relief it would obtain after a trial on the merits." Dakota Indus., Inc. v. Ever Best Ltd., 944 F.2d 438, 440 (8th Cir. 1991) (citations omitted); see also Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 808 (9th Cir. 1963) ("[I]t is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial.") The court finds that while the City raises serious questions, it has not shown irreparable injury, probable success on the merits, or that the balance of the hardships tip in its favor.

    (A) Irreparable Injury

    Irreparable injury is injury that cannot be adequately

5

1 redressed by a legal or equitable remedy following trial.
2 Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir.
3 1992).  The City argues that if AMR is allowed to bid, it will
4 suffer irreparable harm because: (i) its confidential information
5 will be used by AMR to gain competitive advantage; (ii) measuring
6 any potential monetary damages would be too complex; and (iii) it
7 cannot recover its intangible losses through monetary damages.
8 (Mot. at 9-11, 23-25; Reply at 21-23.)

9     The City has failed to show irreparable injury.  First, the
10 City does not make a convincing case that AMR possesses the
11 City's confidential information or that the information, if any,
12 will be of any significant use to AMR during the bid process.
13 Much of the information is already in the public record.
14 Moreover, given that the City has a new bidding partner, it is
15 not clear that the information, even if confidential, can be of
16 any competitive use to AMR.  In addition, if AMR does make use of
17 confidential information in the bidding process, and thereby
18 obtains the award of the ambulance contract from the County, the
19 City may be entitled to damages.

20     Second, the City's argument that its damages will be
21 difficult to compute is also not persuasive.  Since the City
22 intends to bid with another partner, it may win the contract.  In
23 that case, its reliance damages and any damages for the breach of
24 fiduciary duty claim will be determinable.  The same damages may
25 be provable in the event that neither the City nor AMR is the
26 successful bidder.  If the City loses the contract to AMR, the

calculation of damages for both claims, including any recovery of lost profits on the County contract, will still be calculable. A determination of potential lost profits may be challenging, but it is not so difficult as to warrant injunctive relief.

Finally, the City's potential losses are not intangible, as it does not stand to lose goodwill or similar kinds of injury that courts have found irreparable. See Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991)(finding irreparable harm where probable loss of goodwill and damage to ongoing recruitment). The City's claim that it will lose the ability to provide ambulance services to its own residents if the injunction is not issued does not present a significant intangible interest for two reasons. First, an injunction against AMR does not guarantee that the City either will or will not be awarded the ambulance contract by the County. And second, under state law, the County has the authority to create exclusive operating areas. See Cal. Health & Safety Code §§ 1797.85, 1797.224. The City's intangible interest in serving its residents is not an interest recognized in this legislative scheme.

Moreover, the City concedes that if AMR had remained in the joint venture, it could have bid separately without violating the JVA. (City Opp'n to AMR Mot. for Summ. J. at 27.) This concession shows that when the City entered into the JVA, it contemplated the possibility that AMR would make its own competing bid. Therefore, it is difficult to see how AMR's bid

in these circumstances will cause the City irreparable harm.

### (B) Likelihood of Success on the Merits

The City has failed to show probable success on the merits. The City relies on its breach of contract and breach of fiduciary duty claims against AMR. However, these claims depend on the resolution of complex factual issues, and at this juncture the court is not in a position to predict how they will be resolved.

With respect to the breach of contract claim, each party asserts that the other negotiated in bad faith. The City argues that when AMR requested concessions, the City complied. The City appears to have conceded on some major negotiation points, including its willingness to lower its own internal budget and to forego receipt of first responder fees. (Mot. at 13-14.) On the other hand, AMR asserts that the City's bad faith negotiating made it impossible to resolve critical issues. AMR argues that the City would take one position on an outstanding issue, and then renege on the agreement later. (Opp'n at 11.) It appears that on at least one occasion, the City and AMR agreed to keep user fees minimal, only to have the City change its position. (Meyer Dep. at 27-28.) Ultimately, the resolution of the parties' alleged bad faith hinges on questions of fact and issues of credibility. Therefore, it is not clear whether a finder of fact would infer bad faith from AMR's failure to continue negotiations or, alternatively, from the City's alleged failure to take a consistent position in the negotiations.

Similarly, the breach of fiduciary duty claim turns on

1  issues of fact. As discussed above, the City's allegation that
2  AMR will use its confidential information in the bidding process
3  is heavily disputed. Without resolving the merits of this claim,
4  a review of the record reveals that at least some of this
5  information is public. For example, the City's response time
6  standards, dispatch and communication information, and employee
7  safety programs are public or were disclosed to parties other
8  than AMR. (Rodriguez Dep. at 23-25, 74; Hafey Dep. at 110.) In
9  contrast, it appears that AMR may have insight into non-public
10 information regarding the City's budget. (Confidential
11 Supplemental Mot. at 2.) However, the importance of this
12 information is unclear, particularly given that the City has a
13 new bidding partner. A finder of fact must resolve these issues,
14 and the City has not made such a showing that the court can
15 predict an outcome in its favor.

16    In addition, the City's argument that Leff v Gunter, 33
17 Cal.3d 508 (1983), guarantees its success on the merits is not
18 persuasive for the simple reason that in Leff the court had a
19 fully developed record and a jury finding that the defendant had
20 breached its fiduciary duty to the joint venture. Here, the
21 unraveling of the joint venture is the subject of dispute and it
22 is not clear whether AMR's participation in the bid will violate
23 any fiduciary duty. Therefore, the court would have to speculate
24 on the critical facts that had already been determined in Leff by
25 jury trial.

26    Finally, AMR asserts antitrust defenses to the City's claims

that also raise serious questions on the merits.  It is at least open to question whether the joint venturers ever intended any integration of their operations.  Without such integration, the JVA could be viewed as an anti-competitive division of the market between competitors and, therefore, unenforceable.

In short, while the City has raised serious questions concerning AMR's breach of the JVA and associated fiduciary duties, and may prevail on these claims, it has not demonstrated a likelihood of success on the merits.

### (C) The Balance of Hardships

The balance of hardships does not tip in favor of the City. "The basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." Chalk v. United States Dist. Court Cent. Dist. of Cal., 840 F.2d 701, 704 (9th Cir. 1988).  In this case, if AMR is prohibited from bidding and ultimately prevails in trial against the City, it cannot force the County to retroactively consider its bid.  The City, on the other hand, will be able to participate in the RFP either way and can still recover from AMR to the extent it prevails at trial.  Therefore, the best way to preserve the status quo pending resolution on the merits is to allow AMR to bid.

### (D) Public Interest

The denial of the preliminary injunction is further supported by the public interest.  "The less certain the district court is of the likelihood of success on the merits, the more

plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." Southwest Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003) (en banc). Relying on Leff, the City argues that the "enforcement of the fiduciary obligations between partners is of no less . . . importance" than the encouragement of a competitive bidding process on public projects. 33 Cal.3d at 518. However, as discussed above, the court in Leff had before it a jury finding that the defendant had breached its fiduciary duties. The issue was whether a damage award should be sustained, not whether an imminent bidding process should be disrupted by entry of a preliminary injunction on disputed facts.

There is no question that were the injunction to issue forbidding AMR's bid, the competitiveness of the County's bidding process could be significantly affected. AMR has provided ambulance service in the Stockton Zone for a number of years and is the primary provider of ambulance services in Stockton. (Gillis Dep. at 12-13.) In the circumstances here, the certain damage to the public interest in the competitiveness of the County's bidding process were the injunction to issue prevails over the possibility that AMR may gain some unfair advantage in the bidding process from breaching a fiduciary duty were the injunction denied.

### III.

The City has raised serious questions, but has failed to show probable success on the merits, irreparable injury, or that

1  the balance of hardships tips in its favor.  In such a situation,
2  it is in the public interest to permit AMR to bid so that the
3  competitiveness of the County's bidding process is not harmed.
4       The City's motion for a preliminary injunction is DENIED.
5       IT IS SO ORDERED.
6  Dated: September 16, 2005

*[signature]*

DAVID F. LEVI
United States District Judge